UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GARRETT,

        Petitioner,      Case No. 1:23-cv-12499

v.

                                Honorable Thomas L. Ludington
MELINDA BRAMAN,                United States District Judge

        Respondent.   Honorable David R. Grand
                                United States Magistrate Judge
_____/

**OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION TO DISMISS, (2) DENYING CERTIFICATE OF APPEALABILITY, (3) DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL, AND (4) DISMISSING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS WITH PREJUDICE**

A Macomb County jury convicted Petitioner Michael Garrett of carjacking, armed robbery, and resisting or obstructing a police officer in 2017. After state-court appeals, he was ultimately sentenced to concurrent terms of 18 years 9 months to 40 years of imprisonment for the carjacking and armed robbery convictions and 1 to 2 years in prison on the resisting or obstructing conviction. On September 26, 2023, Petitioner filed a petition for a writ of habeas corpus. Respondent Melinda Braman moved to dismiss the Petition, arguing that it is time-barred. Respondent is correct, therefore, her Motion to Dismiss will be granted, and the Petition will be dismissed with prejudice.

I.

In 2017, a Macomb County jury convicted Petitioner Michael Garrett of carjacking, MICH. COMP. LAWS § 750.529a, armed robbery, MICH. COMP. LAWS § 750.529, and resisting or obstructing a police officer, MICH. COMP. LAWS § 750.81d(1). *See* ECF No. 1. The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.2009):

> Complainant Vincenzo Recchia testified that on the day in question he drove his truck to "Macomb Orchard Trail." It is undisputed that defendant was at the trail at that time, having ridden his bicycle there. According to Recchia, after he exited his vehicle defendant approached him and asked for money. Recchia told defendant that he did not have any money and then defendant asked Recchia if he had "dope" or marijuana. Recchia went for a walk on the trail and defendant rejoined him shortly thereafter. Recchia decided to turn around because defendant continued to ask him for money. At one point, defendant told Recchia that he was an "undercover cop" and that he was going to frisk Recchia. Eventually, defendant "pulled a knife," which Recchia described as a "folding knife" with an unopened blade. Recchia then gave defendant his phone and keys; defendant returned to the parking lot, placed his bicycle in Recchia's truck, and drove away.
>
> A woman then arrived in the parking lot and, after Recchia informed her of the situation, offered to follow defendant in her vehicle. Recchia and the woman followed defendant down a dead-end street. At the woman's request, defendant returned Recchia's phone and keys to him.
>
> Defendant then took his bike from the truck and went onto the trail. Law enforcement responded to the scene and tracked defendant to a nearby residence; defendant fled from the police until he was eventually apprehended. Detective Eric Ehrler interviewed defendant after his arrest. Ehrler testified that defendant's "story" of what occurred "consistently changed." However, defendant ultimately admitted to taking Recchia's truck and then returning it to him, although defendant's version of events differed substantially from Recchia's. At Ehrler's suggestion, defendant wrote a letter to Recchia in which he apologized for "trick[ing]" him. The letter was read to the jury and admitted into evidence.
>
> At trial, defendant testified to an entirely new account of what transpired on the day in question. According to defendant, someone named "A.J." obtained Recchia's phone and keys on the trail. A.J. then returned to the trail's parking lot and asked for defendant's bicycle. Defendant obliged, and A.J. placed the bicycle in Recchia's truck and drove away. Defendant then began walking on the trail and saw A.J. parked in the truck at the end of a dead-end street. Defendant implored A.J. to return Recchia's property and offered to do so for him. Defendant said that he wrote an apology letter to Recchia because he thought Recchia was someone he "gipped" on a different occasion.

*People v. Garrett*, No. 338311, 2019 WL 97129, *1 (Mich. Ct. App. Jan. 3, 2019) (footnote omitted).

After the jury convicted Petitioner, the court sentenced him to concurrent terms of twenty-five to forty years in prison for the carjacking and armed robbery convictions and one to fifteen

years in prison for the resisting and obstruction conviction. *See* ECF No. 1 at PageID.1. Petitioner then appealed, challenging his convictions and sentence. *See Garrett*, 2019 WL 97129 at *2, 5. The Michigan Court of Appeals affirmed his convictions but remanded the case to the trial court to determine when Petitioner received notice of the habitual offender enhancement. *Id.* at *1, 7. Petitioner applied for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Garrett*, 934 N.W2d 231 (Mich. 2019).

On remand, the trial court sentenced Petitioner to concurrent terms of 18 years 9 months to 40 years of imprisonment for the carjacking and armed robbery convictions and 1 to 2 years in prison on the resisting or obstructing conviction. *See* ECF Nos. 1-3 at PageID.313–14; 6 at PageID.660. Petitioner appealed his new sentence. *People v. Garrett*, No. 352884, 2021 WL 1050358, *1 (Mich. Ct. App. Mar. 18, 2021). The Michigan Court of Appeals affirmed his new sentence. *Id.* Petitioner attempted to apply for leave to appeal with the Michigan Supreme Court, but his application was rejected as untimely. ECF No. 7-35.

On October 28, 2021, Petitioner filed a motion for relief from judgment with the state trial court, raising several claims for relief, which was denied on November 4, 2021.[1] ECF Nos. 7-28; 7-29. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied on September 29, 2022. *People v. Garrett*, No. 361022 (Mich. Ct. App. Sept.

---

[1] Although the court received the motion for relief for judgment on November 4, 2021, it is dated October 28, 2021. *See* ECF Nos. 7-28; 7-29. Under Michigan's prison mailbox rule—which provides that that an unrepresented, incarcerated individual's "pleading or other document must be deemed timely filed if it was deposited in the institution's outgoing mail on or before the filing deadline," MICH. CT. R. 1.112—the filing's October 28, 2021 outgoing postmark date controls. *See, e.g., Kincaid v. Campbell*, No. 2:21-CV-10574, 2024 WL 1054525, *5, n. 2 (E.D. Mich. Mar. 11, 2024); *Wilson v. Braman*, No. 5:23-CV-10132, 2024 WL 691352, *2, n. 2 (E.D. Mich. Feb. 20, 2024) (citing *Borns v. Nagy*, No. 2:17-CV-13694, 2023 WL 6396573, *3 (E.D. Mich. Sept. 29, 2023)).

29, 2022); ECF No. 7-34. Petitioner then applied for leave to appeal to the Michigan Supreme Court, which was denied on March 6, 2023. *People v. Garrett*, 985 N.W.2d 511 (Mich. 2023).

On September 26, 2023, Petitioner filed a petition for a writ of habeas corpus. ECF No. 1. Petitioner raises nine claims concerning prosecutorial and judicial misconduct, denial of an evidentiary hearing for statements he made, ineffective trial and appellate counsel, unlawful arrest and search, video arraignment without counsel, and use of perjured testimony. *See id.* On April 11, 2024, Respondent Melinda Braman moved to dismiss the Petition, arguing that it is time-barred by the relevant one-year statute of limitations. ECF No. 6.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2241 *et seq.*, includes a one-year statute of limitations for habeas petitions brought by prisoners challenging state-court judgments:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d); *Moss v. Miniard*, 62 F.4th 1002, 1009 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 1004 (2024). A habeas petition filed outside the proscribed period must be dismissed unless equitable tolling applies. *See Isham v. Randle*, 226 F.3d 691, 694–95 (6th Cir. 2000) (dismissing case filed 13 days late); *see also Sherwood v. Prelesnik*, 579 F.3d 581, 584–85 (6th Cir. 2009). District courts may even "consider, *sua sponte*, the timeliness of a state prisoner's federal habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). And the timing of the limitations period is calculated based on the "anniversary" of the finality of the petitioner's conviction and begins to run the day after the conviction is final. *Moss*, 62 F.4th at 1009–10.

Here, the Petition is untimely. The Michigan Court of Appeals affirmed Petitioner's new sentences on March 18, 2021. *Garrett*, 2021 WL 1050358 at *1. Petitioner then had fifty-six days to seek leave to appeal with the Michigan Supreme Court. Mich. Ct. R. 7.305(C)(2). He did not do so timely.[2] *See* ECF No. 7-35. His convictions and sentences thus became final on May 13, 2021, when his time to appeal to the Michigan Supreme Court expired. *See Gonzalez*, 565 U.S. at 154 ("[A] state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review expires."); *see also Williams v. Birkett*, 670 F.3d 729, 731 (6th Cir. 2012). The statute of limitations period began running the next day, May 14, 2021. *See King v. Morgan*, 807 F.3d 154 (6th Cir. 2015). As a result, Petitioner needed to file his federal habeas petition by May 13, 2022, excluding any time during which a properly filed application for state collateral review was pending. *See* 28 U.S.C. § 2244(d)(2).

---

[2] Normally, the one-year statute of limitations does not begin to run until the 90-day period for filing a petition for a writ of certiorari in the United States Supreme Court expires. *See* Sup. Ct. R. 13; *see also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). But Petitioner is not entitled to the 90-day addition to the limitations period because his failure to timely seek leave to appeal with the Michigan Supreme Court divested the United States Supreme Court of jurisdiction. *See Gonzalez*, 565 U.S. at 154.

After 167 days of the one-year period had passed, Petitioner sought collateral review by filing a motion for relief from judgment with the state trial court on October 28, 2021, which was denied. ECF Nos. 7-28; 7-29. The Michigan Court of Appeals then affirmed that denial. *People v. Garrett*, No. 361022 (Mich. Ct. App. Sept. 29, 2022); ECF No. 7-34. And the Michigan Supreme Court denied leave to appeal on March 6, 2023. *People v. Garrett*, 985 N.W.2d 511 (Mich. 2023). The one-year clock thus stopped until March 6, 2023, but resumed running the next day. *See* 28 U.S.C. § 2244(d)(2). Given that 167 days had already passed, Petitioner had 198 days after March 6, 2023 (when leave to appeal was denied) to file his Petition, meaning his deadline for filing a habeas petition was September 21, 2023. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (noting that AEDPA's limitation period doesn't run anew after state collateral proceedings have tolled the limitations period). But Petitioner did not file his Petition by that deadline. *See* ECF No. 1.

Petitioner seemingly argues that in addition to his state collateral proceedings tolling his filing deadline, newly discovered evidence tolled his clock to file his Petition. *See* ECF No. 8 at PageID.2584. It did not. Under § 2244(d)(1)(D), the limitations period begins to run when a petitioner knows, or through due diligence, could have discovered the essential facts for a habeas claim, not when the petitioner recognizes the legal significance of those facts. *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017); *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) ("The question . . . is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care."). And a habeas petitioner bears the burden of showing due diligence in discovering the factual predicate for his or her claims. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006).

Here, Petitioner knew or could have known the facts underlying his habeas claims at the time of his trial and direct appeals in state court. Indeed, in his Motion for Relief from Judgment, Petitioner admitted that he learned of the "newly discovered" evidence after his initial appeal but before his second appeal (after re-sentencing). *See* ECF No. 7-28 at PageID.1359, 1366–67, 1372–73, 1379, 1383–84. So Petitioner knew of the facts underlying his habeas claims before his convictions became final. At bottom, he has not established that any evidence is so newly discovered that it would make any of his habeas claims timely and was thus not entitled to more time to file his Petition on a statutory basis.

Petitioner also argues that his Petition is timely because it is subject to equitable tolling. *See* ECF No. 8. A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Robertson v. Simpson*, 624 F.3d 781, 783 784 (6th Cir. 2010). A petitioner bears the burden of establishing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). "Typically, equitable tolling applies only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (cleaned up). Petitioner ostensibly raises two bases for equitable tolling. Both lack merit.

First, Petitioner asserts that he is entitled to equitable tolling due to various prison conditions that, despite his diligence, impeded his ability to timely file his application for leave to appeal with the Michigan Supreme Court on direct appeal within the 56 days to do so. ECF No. 8 at PageID.2581–83. To that end, Petitioner asserts that he is entitled to equitable tolling due to events that occurred before his convictions became final, *e.g.*, segregation, limited law library

access, and a prison transfer. *See id.* But these pre-finality circumstances cannot toll the one-year statute of limitations because it had not started yet. *See Smith v. Romanowski*, No. 12 CV 13557, 2013 WL 3940623, *3 (E.D. Mich. July 31, 2013). And at any rate, Petitioner's claimed diligence in pursuing his direct appeal in the state courts is not particularly relevant to his delay in seeking federal habeas review. *See Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) (noting the petitioner's diligence in state post-conviction proceedings did not address his diligence in seeking federal habeas review).

Second, Petitioner contends that he is entitled to equitable tolling because he was working two prison jobs and had college course work due near the time his habeas petition was due. *See* ECF No. 8 at PageID.2584. While Petitioner's work and pursuit of higher education are commendable, they are normal aspects of prison life and do not warrant equitable tolling. *See generally Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750–51 (6th Cir. 2011) (rejecting petitioner's claim that he was entitled to equitable tolling due to normal aspects of prison life); *see also Fox v. Holland*, No. 15 CV 02134 YGR, 2016 WL 4943003, *5 (N.D. Cal. Sept. 16, 2016) (prison work assignment is not an extraordinary circumstance warranting equitable tolling); *Malo v. Tampkins*, No. 13 CV 02449, 2014 WL 2573313, *5 (S.D. Cal. June 6, 2014) (same); *Popov v. Marshall*, No. 106CV00945OWWTAGHC, 2008 WL 345926, *5 (E.D. Cal. Feb. 6, 2008), R&R adopted, 2008 WL 865489 (E.D. Cal. Mar. 28, 2008) (prisoner's pursuit of college degree did not provide a basis for equitable tolling).

Not to mention, Petitioner does not explain how his prison jobs or college classes prevented him from timely filing his habeas petition or what steps he took to try to file his habeas petition during the relevant period. *See, e.g., Andrews v. United States*, No. 17-1693, 2017 WL 6376401, *2 (6th Cir. 2017) (denying a certificate of appealability on statute of limitations dismissal where

petitioner failed to provide detailed explanation about his filing delay); *United States v. West*, No. 4-18-cr-737, 2022 WL 44670, *3–4 (N.D. Ohio Jan. 5, 2022) (same). And if Petitioner was pressed for time, he could have submitted a bare-bones habeas petition listing his claims within the one-year period and later supplemented his pleadings as necessary. In the end, Petitioner has not shown that extraordinary circumstances beyond his control prevented him from timely filing his habeas petition or that he diligently pursued his claims during the relevant one-year period. So Petitioner is not entitled to equitable tolling.

In sum, the Petition was not filed within AEDPA's one-year statute of limitations. And neither statutory bases—namely, "newly discovered evidence"—nor equitable tolling principles warrant extending that period. So the Petition, ECF No. 1, is time-barred, and Respondent's Motion to Dismiss, ECF No. 6, will be granted.

**III.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

Here, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Thus, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**IV.**

- 10 -

Accordingly, it is **ORDERED** that Respondent's Motion to Dismiss, ECF No. 6, is **GRANTED.**

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

Further, it is **ORDERED** that the Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case.**

Dated: March 6, 2025                             s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge